### STEBBINS *v.* MORRIS and others.

*(Circuit Court, N. D. New York. March 22, 1885.)*

TRUST—PAYMENT OF PURCHASE MONEY FOR LAND, AND TITLE TAKEN IN NAME OF THIRD PARTY—REV. ST. N. Y. §§ 51, 52.

    M., D., W., and K. entered into a verbal agreement to purchase from J., for their joint benefit, certain land, each of them to advance one-fourth of the purchase money, and the title to be taken in the name of K. The money was advanced, the land purchased, and an absolute deed executed to K., who immediately delivered to M., D., and W. a written memorandum acknowledging the receipt of the purchase money, and that each of the co-purchasers was the joint owner of one-fourth part of the land. K. became insolvent, and made an assignment to V., and V. assigned and deeded to S., as assignee in bankruptcy of K., all of the property assigned to him. S. sold the land under order of the court. *Held*, that the purchaser at such sale acquired a good title as against M., D., and W.

In Equity.

*Hale & Bulkley*, for plaintiff.

*F. Fish* and *John M. Carroll*, for defendant.

WALLACE, J. This action was brought in the supreme court of the state of New York, and was removed to this court upon the petition of the plaintiff. It is a partition suit, brought under the provisions of the Code of Procedure, and the defendants are made parties as claiming an adverse interest to the plaintiff in the real estate sought to be partitioned. The defendant Cornelius Kline has the legal title

to one undivided fourth part of the real estate. The suit involves the rights of the other parties to three undivided one-fourth parts of certain real estate conveyed April 1, 1870, by one Jackson to James W. Kline. Kline was adjudged a bankrupt upon the petition of his creditors filed on the twenty-ninth day of August, 1878, in the United States district court for the Northern district of New York, and one Vandenburg was subsequently appointed his assignee. On the twenty-fourth day of September, 1881, the said Vandenburg as such assignee, pursuant to the direction and order of the court in bankruptcy, sold and conveyed by deed to the plaintiff all the estate, title, and interest of said Kline in said real estate vested in said assignee. Within three months of the filing of the petition in bankruptcy, Kline had made a general assignment of all his property for the benefit of creditors to one Stewart; and on the twenty-seventh day of December, 1878, Stewart, by deed, granted, conveyed, and released to Vandenburg, as assignee of Kline in bankruptcy, all the real estate which was transferred to him by Kline under the general assignment.

Whether Vandenburg, as assignee of Kline in bankruptcy, acquired Kline's interest by a title superior to Stewart's, or acquired it by the deed of release from Stewart, is not material. The title was in him at the time of the sale under the order of the court, and the plaintiff acquired any title that the assignee could convey. It follows that the plaintiff had the legal title at the time of the commencement of the suit to the three undivided fourth parts of the land in question. The defendants claim to be the equitable owners of the three undivided fourth parts of the land, and insist that the plaintiff's legal title is subordinate to their equitable title because the plaintiff is chargeable with notice of their equities. Their equitable title arises out of the following facts: On or before April 1, 1870, Morris, De Wolf, McDonnell, and Kline entered into a verbal agreement to purchase for their joint benefit of Jackson the land in controversy. By this agreement each of them was to advance one-fourth of the purchase money to pay for the land, and the title was to be taken in the name of Kline. The money was accordingly advanced, and on the first day of April, 1870, a deed was executed by Jackson to Kline, in which Kline was named sole grantee. The deed did not express any trust in behalf of the co-purchasers. Immediately after receiving the deed, and on the same day, Kline delivered to each of the co-purchasers a memorandum in writing, whereby he acknowleged the receipt of the purchase money, and that each of the co-purchasers was the joint owner of one-fourth part of the real estate. Kline subsequently mortgaged an undivided fourth part of the land. The title remained in him as sole owner until he became insolvent and made the general assignment to Stewart.

Upon these facts it must be held that the defendants who claim under Morris, McDonnell, and De Wolf have no equitable title. If the agreement between Kline and the other co-purchasers had been

made after he acquired title from Jackson, or if the deed from Jackson had not been executed directly to Kline pursuant to the agreement between the co-purchasers, there would be no difficulty in maintaining that all the co-purchasers acquired an equitable title by virtue of the transaction between themselves. But the transaction is directly within the operation of those sections of the Revised Statutes of the state relating to uses and trusts, which are as follows:

"Sec. 51. Where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section.

"Sec. 52. Every such conveyance shall be presumed fraudulent as against the creditors, at that time, of the person paying the consideration; and where a fraudulent intention is not disproved a trust shall result in favor of such creditors to the extent that may be necessary to satisfy their just demands."

The meaning and effect of these provisions was considered by the court of appeals in *Garfield* v. *Hatmaker*, 15 N. Y. 475, and it was held that where a grant for a valuable consideration is made to one person, and the consideration therefor is paid by another, no interest, legal or equitable, vests in the person paying the consideration, but the statute imposes upon the legal estate in the hands of the grantor a pure trust in favor of the creditors at the time of the person paying the consideration, which can be enforced in equity only. As stated in the opinion of BROWN, J., "the plain and obvious import of the language of the sections is to destroy the trust or use which, but for the statute, would have resulted to the person paying the consideration as a legal consequence of the act;" and, in the language of COMSTOCK, J., (page 478,) "the person paying the consideration money must take the conveyance to himself or he can have no legal or equitable interests in the land." In *Everett* v. *Everett*, 48 N. Y. 218, such was held to be the legal consequence of the conveyance, although the deed was delivered to and retained by the person who paid the consideration. The object of the statute was to prevent secret frauds by imposing the penalty of forfeiture of the estate upon parties who thus conceal their real ownership under the name of another person. *Siemon* v. *Schurck*, 29 N. Y. 610. Doubtless, in the transaction here, there was no fraudulent purpose in the minds of the parties to it. The effect was, however, by investing Kline with the ostensible title, to give him credit, and produce just such consequences as the statute was intended to prevent. The written memorandum delivered by Kline cannot be treated as a contract to convey made after he acquired title. It was evidence merely of the original transaction.

A decree will be entered for a partition and sale, and establishing the rights of the parties according to this opinion.